IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**11/10/2009**

|                               |     |                          |
| ----------------------------- | --- | ------------------------ |
| IN RE                         | )   |                          |
|                               | )   |                          |
| CDX GAS, LLC, ET AL.,         | )   | CASE NO. 08-37922-H3-11  |
|                               | )   |                          |
|   Debtors,          | )   |                          |
|                               | )   |                          |
| VAN WHITFIELD, ET AL.,        | )   |                          |
|                               | )   |                          |
|   Plaintiffs,       | )   |                          |
| v.                            | )   | ADV. NO. 09-3190         |
|                               | )   |                          |
| CDX GAS, LLC, ET AL.,         | )   |                          |
|                               | )   |                          |
|   Defendants.       | )   |                          |
|                               | )   |                          |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted" (Docket No. 12) filed by MR Exploration Ventures, LLC ("MRX") and the "Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted (Docket No. 23) filed by CDX Gas, LLC, CD Exploration, LLC, CDX North America, LLC, CDX Acquisition Company, LLC, and CMV Joint Venture (collectively, "Debtors").

<u>Background</u>

Debtors, together with thirteen other affiliates, filed petitions under Chapter 11 of the Bankruptcy Code on December 12, 2008.  By order entered September 24, 2009, the court confirmed a

plan with respect to Debtors, providing for, <u>inter alia</u>,

dismissal of the Chapter 11 case of CDX North America, LLC.

The confirmation order provides in pertinent part, with

respect to the instant adversary proceeding:

> AA.  <u>Settlement with Van P. Whitfield, Stephen Clark,
> Richard McCullough, Dan Behrendt, Lawrence Finn, and
> Doug Seams</u>.  Notwithstanding anything to the contrary
> contained in the Plan or this Confirmation Order: (a)
> the Whitfield Group shall not be deemed to have
> released any non-Debtor parties; (b) Confirmation of
> the Plan shall not be deemed to have released,
> discharged, enjoined or exculpated any obligations of
> the Debtors to comply with orders entered by this Court
> in Adversary Proceeding No. 09-3190 ("Adversary
> Proceeding") or the contested matter styled Debtors'
> Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval
> of Entry Into Settlement with MR Exploration Ventures,
> LLC ("MR Settlement Motion") including any directive or
> order relative to the Debtors' compliance with
> documents involved in the Adversary Proceeding or MR
> Settlement Motion; and (c) solely with respect to the
> issues raised in the Adversary Proceeding and MR
> Settlement Motion, nothing contained in the Debtors'
> Plan shall impact in any manner the rights of the
> parties with respect to the issues raised in the MR
> Settlement Motion and Adversary Proceeding and such
> issues shall be determined in all respects as if they
> had been heard and decided prior to entry of this
> Confirmation Order.

(Docket No. 1029, Case No. 08-37922-H3-11).

On January 26, 2006, CDX Acquisition Company, LLC and

CDX, LLC executed a Membership Interest Purchase Agreement

("MIPA") under which certain interests of CDX, LLC[1] in its

subsidiaries were to be transferred to a holding company, and

---

[1]CDX, LLC is now known as MR Exploration Ventures, LLC.  <u>See</u>
Docket No. 394, Case No. 08-37922-H3-11.  All remaining
references are to MRX.

acquired by Debtor CDX Acquisition Company, LLC ("CDX
Acquisition").

Plaintiffs filed suit prepetition, in the 101st
Judicial District Court of Dallas County, Texas, seeking
compensation based on asserted profit participation and/or
minority interests in the entities sold by MRX to CDX
Acquisition.  (Docket No. 8; Docket No. 246, Case No. 08-37922-
H3-11).  The state court pleadings are not before this court.[2]

In connection with the closing of the purchase by CDX
Acquisition, the MIPA provided for establishment of an escrow
account at JP Morgan Chase Bank, N.A. ("JPM").  An escrow
agreement was signed, and the escrow account was established and
funded with $65 million at the closing on January 26, 2006.

On December 18, 2007, MRX, CDX Acquisition, and CDX
Gas, LLC entered into a settlement agreement, prepetition (the
"Settlement Agreement").  The Settlement Agreement recited, _inter
alia_, that Plaintiffs had filed suit.  The Settlement Agreement
generally provided that $10 million would be paid from the escrow
account to CDX Acquisition, $10 million would remain in the
escrow account, and the remainder would be paid to MRX.

MRX, CDX Acquisition, CDX Gas, LLC, and JPM entered
into an amended and restated escrow agreement in January, 2008.

---

[2]The parties have advised the court that a portion of the
state court litigation has been referred to arbitration, a
portion remains awaiting trial in the state court, and a portion
is on appeal from the state trial court.

In the instant adversary proceeding, Plaintiffs seek:

entry of a judgment declaring that any funds payable to the Debtor, pursuant to the provisions of the Settlement Agreement and the JPM Escrow Account on account of determined claims of the Whitfield Group, are held by any of the applicable Defendants: a) not as property of that or any other Defendants' estate in accordance with by §541(b)(1); or alternatively b) in legal title only and that the equitable interest in the such funds are held by the applicable member of the Whitfield Group in accordance with §541(d).

(Docket No. 8, at p. 10).

Plaintiffs also seek:

entry of a judgment declaring that any funds payable to the Debtor, pursuant to the provisions of the Purchase Agreement on account of determined claims of the Whitfield Group, are held by any of the applicable Defendants: a) not as property of that or any other Defendants' estate in accordance with by §541(b)(1); or alternatively b) in legal title only and that the equitable interest in the such funds are held by the applicable member of the Whitfield Group in accordance with §541(d).

(Docket No. 8, at p. 11).[3]

Plaintiffs assert that:

The Whitfield Group's claims are, for the most part, based upon specific agreements with applicable Debtors or their prereorganization predecessors that: a) their equity securities would be "cashed out"; or b) that profits earned prior to the transactions at issue would be paid, per applicable contractual agreements.

(Docket No. 8, at p. 4-5).

The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered denying

---

[3]The third count of the complaint sought a declaratory judgment as to the effect of the plan.  The parties acknowledge that that issue has been disposed of by the confirmation order.

the instant motions.  To the extent any of the Findings of Fact
are considered Conclusions of Law, they are adopted as such.  To
the extent any of the Conclusions of Law are considered Findings
of Fact, they are adopted as such.

<u>Findings of Fact</u>

In the instant motions, MRX and Debtors seek dismissal.
MRX seeks dismissal on grounds Plaintiffs lack standing to seek
the relief sought in the complaint in the instant adversary
proceeding, for the reason that they are not third party
beneficiaries of the MIPA, the Settlement Agreement, or the
Escrow Agreement.  Debtors seek dismissal on grounds Plaintiffs
lack any claim to the escrowed funds, and also on grounds
Plaintiffs lack standing.

The MIPA provides in pertinent part:

1.06 <u>NPI Deduction Amount</u>.  The Acquisition Price shall
be reduced pursuant to <u>Section 1.02(e)</u> by the aggregate
amount, if any, (the "<u>NPI Deduction Amount</u>") that the
officers and employees of Seller and the Subsidiaries
covered by written employment agreements with the
Seller or its Subsidiaries would be entitled to receive
with respect to their "project profits participation,"
"net profits interests," or similar interests ("<u>Profits
Interests</u>") upon a merger, consolidation or change of
control of Seller or a Subsidiary, as applicable,
assuming, for purposes of calculation of the NPI
Deduction Amount, that such merger, consolidation or
change of control occurs at Closing, and that after the
Closing Purchaser is unwilling to continue to pay such
employee the equivalent of the Profits Interest that
was vested and unvested immediately before such merger,
consolidation or change of control.

* * *

5

1.08 <u>Reorganization</u>

*   *   *

(a) Except as provided in <u>Section 1.08(b)</u>, in connection with the Subsidiary Mergers, Seller shall cause certain Subsidiaries of Seller, including Subsidiaries of Seller that have Minority Holders, to be merged, directly or indirectly, into the Company or another wholly-owned Subsidiary of the Company whereby the interests of such Minority Holders will be eliminated in exchange for cash.

(b) If Seller is unwilling or unable for any reason to cause any Subsidiary Merger to occur prior to the Closing, it shall not be a breach of this Agreement, but the Acquisition Price shall be reduced by the amount attributable to any interests of the Minority Holders in any such Subsidiaries (other than the Surviving Subsidiaries) that remain at the Closing ("<u>Remaining Minority Interest</u>"), with the reduction in the Acquisition Price for any such Remaining Minority Interest ("<u>Minority Interest Deduction</u>") determined as provided in <u>Section 1.08(c)</u> below.  The sum of the Minority Interests Deductions with respect to all Remaining Minority Interests is referred to herein collectively as the "<u>Minority Interest Deficiency Amount</u>."

(c) The Minority Interest Deduction with respect to any Remaining Minority Interest shall equal an amount agreed by Seller and Purchaser in good faith prior to the Closing equal to the fair market value of such Remaining Minority Interest taking into account all relevant facts and circumstances; <u>provided</u>, that if Seller and Purchaser are unable to agree on the Minority Interest Deduction with respect to any Remaining Minority Interest, the dispute shall be settled by the Accounting Firm, who shall act as an arbitrator to make a determination based on presentations by Seller and Purchaser, and by independent review by the Accounting Firm if deemed necessary in the sole discretion of the Accounting Firm, which determination shall be limited to only the value of the Remaining Minority Interests in dispute for purposes of this <u>Section 1.08(c)</u>.  The decision of the Accounting Firm shall be made within thirty (30) days following submission of the dispute to the

6

Accounting Firm and shall be final and binding.  The fees and expenses of the Accounting Firm, if any, shall be paid by the party who the Accounting Firm determines is the prevailing party with respect to the dispute (if there is a prevailing party), or in such other manner as the Accounting Firm shall determine.  The Closing shall not be delayed by reason of a dispute in the value of the Remaining Minority Interest.  An amount representing the higher of the values of each Remaining Minority Interest proposed by each of Seller and Purchaser shall be placed in escrow in a separate account designated as the "Minority Interest Account" with the Escrow Agent at the Closing.  The Accounting Firm will provide Seller and Purchaser with its determination of the value of the Remaining Interest, and Seller and Purchaser will each promptly notify (or jointly notify) Escrow Agent of such value.  The amount of such value shall then be paid from the Minority Interest Account by Escrow Agent pursuant to the terms of the Escrow Agreement.

* * *

1.12 Closing; Escrow

* * *

(a) At the Closing, Purchaser will pay the Acquisition Price by wire transfer of immediately available funds to such accounts as Seller may direct by written notice delivered to Purchaser at least two (2) Business Days before the Closing Date; provided that a portion of the Acquisition Price in an amount equal to Fifty Million Dollars ($50,000,000.00) shall be delivered by wire transfer of immediately available funds to an escrow account (the "Escrow Account") established with JPMorgan Chase Bank, N.A. as escrow agent (the "Escrow Agent") under an escrow agreement to be entered into on the Closing Date by Seller, Purchaser and the Escrow Agent substantially in the form of Exhibit B hereto (the "Escrow Agreement").  The Escrow Agreement will provide a holdback to cover indemnity claims under this Agreement, as well as adjustments required under Sections 1.08(c), 11.06(b) and 11.06(c). Simultaneously, Seller will assign and transfer to Purchaser Seller's entire right, title and interest in and to the Securities pursuant to instruments of transfer reasonably acceptable to Purchaser.  At the

7

Closing, there shall also be delivered to Seller and
Purchaser the opinions, certificates and other
Contracts, documents and instruments to be delivered
under Articles VI and VII.

* * *

11.02 <u>Other Indemnification</u>.

(a) Subject to the other Sections of this <u>Article XI</u>,
Seller shall indemnify the Purchaser Indemnified
Parties in respect of, and hold each of them harmless
from and against, any and all Losses suffered, incurred
or sustained by any of them or to which any of them
becomes subject, resulting from, arising out of or
relating to (i) any breach of representation or
warranty or nonfulfillment of or failure to perform any
covenant or agreement on the part of Seller contained
in this Agreement, and (ii) any claims of the holders
of minority interests in Subsidiaries of Seller prior
to Closing, in their capacity as equity owners of such
Subsidiaries, relating to the Reorganization.

(b) Subject to the other Sections of this <u>Article XI</u>,
Purchaser shall indemnify the Seller Indemnified
Parties in respect of, and hold each of them harmless
from and against, any and all Losses suffered, incurred
or sustained by any of them or to which any of them
becomes subject, resulting from, arising out of or
relating to any breach of representation or warranty or
nonfulfillment of or failure to perform any covenant or
agreement on the part of such Purchaser contained in
this Agreement.

11.03 <u>Method of Asserting Claims</u>

All claims for indemnification by any Indemnified Party
under <u>Section 11.02</u> will be asserted and resolved as
follows:

(a) In the event any claim or demand in respect of
which an Indemnified Party might seek indemnity under
Section 11.02 is asserted against or sought to be
collected from such Indemnified Party by a Person other
than Seller or any Affiliate of Seller or of the
Purchaser (a "Third Party Claim"), the Indemnified
Party shall deliver a Claim Notice with reasonable
promptness to the Indemnifying Party.

8

* * *

If the Indemnifying Party has timely disputed its liability with respect to such claim, the Indemnifying Party and the Indemnified Party will proceed in good faith to negotiate a resolution of such dispute, and if not resolved through negotiations within the Resolution Period, such dispute shall be resolved by proceedings in accordance with Section 14.11.

* * *

13.01 <u>Definitions.  Defined Terms</u>

* * *

"<u>Indemnified Party</u>" means any Person claiming indemnification under any provision of <u>Article XI</u>.

* * *

14.08 <u>No Third Party Beneficiary</u>.  The terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other Person other than any Person entitled to indemnity under <u>Article XI</u>.

* * *

14.13 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Laws of the State of New York applicable to a Contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

(Debtors' Exhibit 2A).

The January 26, 2006 Escrow Agreement provides in

pertinent part:

THIS ESCROW AGREEMENT...by and among CDX, LLC, a Texas limited liability company ("Seller"), CDX Funding, LLC, a Delaware limited liability company ("Purchaser", and together with Seller, sometimes referred to collectively as the "Parties"), and JPMorgan Chase

9

Bank, N.A. (the "Escrow Agent").

* * *

2.  Escrow Fund.  (a) Simultaneous with the execution
and delivery of thie Escrow Agreement, Purchaser is
depositing in one account (the "Account") with the
Escrow Agent, the sum of SIXTY-FIVE MILLION DOLLARS
($65,000,000.00)(the "General Deposit" or the "Escrow
Deposit").  The account containing the General Deposit
shall be referred to as the "General Account."

* * *

4.  Delivery and Distribution of the Escrowed Funds
from the General Account.  The Escrow Agent shall
deliver the Escrow Fund from the General Account upon,
and pursuant to, the following instructions:

(a)  Purchaser may give notice (a "Purchaser Notice")
to the Escrow Agent and Seller specifying in reasonable
detail the factual basis and dollar amount of damages
(if the dollar amount cannot then be determined,
Purchaser shall provide its reasonable belief as to the
dollar amount of damages to which it is entitled) with
respect to any breach or other claim that is covered by
an indemnification obligation of Seller that Purchaser
reasonably believes it has under the Purchase
Agreement, including Special Claims (collectively, a
"General Claim").  If Seller gives notice to Purchaser
and the Escrow Agent disputing any General Claim (a
"Seller Counter Notice") prior to 5:00 p.m. Central
Time on the fifteenth (15th) day following receipt by
Escrow Agent of the Purchaser Notice regarding such
General Claim, such General Claim shall be resolved as
provided in Section 4(b) below.  If no Seller Counter
Notice is received by the Escrow Agent within such 15-
day period, then the dollar amount of damages claimed
by Purchaser as set forth in the Purchaser Notice shall
be deemed established for purposes of this Agreement
and the Purchase Agreement, and the Escrow Agent shall
pay to Purchaser the dollar amount claimed in the
applicable Purchaser Notice out of the General Account.

(b)  If a Seller Counter Notice is given with respect
to a General Claim, the Escrow Agent shall make payment
from the General Account with respect thereto only in
accordance with (i) joint written instructions of

10

Purchaser and Seller or (ii) a final decision of the
arbitrators in accordance with Section 14.11 of the
Purchase Agreement.

(Respondents' Exhibit 1).

The December 18, 2007 Settlement Agreement provides in

pertinent part:

6.   SELLER INDEMNIFICATION OBLIGATIONS

(a)   Seller shall assume, be obligated for and shall
indemnify, defend and hold the TCW Indemnified Parties
harmless from and against any and all Losses suffered,
incurred or sustained, whether in the past or in the
future, by any of them or to which any of them becomes
subject, resulting from, arising out of or relating to
any of the following:

* * *

(ii) any claims, demands, or causes of action against
any of the TCW Indemnified Parties (A) brought or
asserted before the Effective Date of this Agreement by
the Plaintiffs in the Whitfield Litigation and/or the
Whitfield Arbitration (the "Whitfield Plaintiffs"), or
(B) brought or asserted on or after the Effective Date
of this Agreement by any of the Whitfield Plaintiffs,
but only in the case of this clause (B) to the extent
arising out of, relating to or in connection with any
performance, breach, undertaking, agreement, act or
omission of Seller or any Covered Subsidiary, or any of
their managers, officers, directors or employees before
the Closing or arising out of, related to, or in
connection with the Closing;

* * *

(c)   All claims for indemnification under this Section
6 shall be resolved in accordance with procedures set
forth in Section 11.03 (Method of Asserting Claims) of
the MIPA, which is hereby incorporated by reference
into this Agreement, subject to Section 7 and the other
provisions of this Agreement (which provisions of this
Agreement shall control in the event of a conflict).

* * *

11

12.   SECURITY FOR INDEMNITY OBLIGATIONS.

(a)  Pursuant to the terms of the Restated Escrow
Agreement, the Remaining Amount in the Escrow Account
shall be held by the Escrow Agent to secure Seller's
indemnification obligations set forth in Section 6(a)
above (including the obligation to pay costs and defend
the TCW Indemnified Parties against the Winn
Litigation, but excluding the obligation to pay the
Winn Settlement or Judgment Amount (as defined below)),
but only with respect to claims asserted against the
TCW Indemnified Parties (i) in the Whitfield
Arbitration or the Whitfield Litigation prior to the
Effective Date (as to $4,000,000) and (ii) on or after
the Effective Date as to the other indemnification
obligations set forth in Section 6 (as to the balance
in the Escrow Account).  Amounts shall be distributed
or released as set forth in the Restated Escrow
Agreement.  Upon the (x) dismissal with prejudice
following the settlement of the Whitfield Litigation or
the Whitfield Arbitration as to any particular
claimant, which settlement(s) shall include a full and
unrestricted release of the TCW Indemnified Parties who
are parties to the action or proceeding from any claims
indemnified hereunder, or (y) upon the termination of
the Whitfield Litigation or the Whitfield Arbitration
as to any particular claimant pursuant to a final non-
appealable judgment or arbitration award, Seller and
Purchaser shall issue joint written instructions to the
Escrow Agent to release an amount set forth opposite
such claimant's name from the Escrow Account (with the
aggregate amount subject to release with respect to the
Whitfield Litigation and the Whitfield Arbitration
equal to Four Million Dollars ($4,000,000)) to pay (A)
to CDX Gas the amount of any such judgment or
settlement payable by the TCW Indemnified Parties,
which amount shall be promptly paid by CDX Gas to such
claimant, and (B) to Seller the amount of any excess:

| Claimant | Amount |
|---|---|
| Van Whitfield | $1,500,000 |
| Richard McCullough | $500,000 |
| Stephen Clark | $500,000 |
| Lawrence Finn | $500,000 |
| Doug Seams | $500,000 |
| Dan Behrendt | $500,000 |

If the amount of such settlement or judgment exceeds
the amounts set forth above, Seller shall be liable and
responsible for the payment of such excess amount.
Seller shall not settle the Whitfield Litigation or the
Whitfield Arbitration without the consent of Purchaser,
which consent shall not be unreasonably withheld;
provided, that for the avoidance of doubt, it shall not
be unreasonable for Purchaser to withhold its consent
to a settlement that would cause any TCW Indemnified
Party to become obligated to recognize any Profits
Participation, Equity Interest or Property Interest
that is not terminated or purchased by Seller at the
time of the settlement.

* * *

16.   MISCELLANEOUS

* * *

(f) <u>Law Governing and Forum Selection</u>.  The validity,
construction, enforcement and effect of this Agreement
shall be governed by the laws of the State of New York
without giving effect to the conflicts of laws
provision thereof. Any dispute arising out of, relating
to or in connection with this Agreement, except as
provided in Section 7(b) above, shall be resolved in
accordance with Section 14.11 (Arbitration) of the
MIPA, which is hereby incorporated herein by reference.

(Debtors' Exhibit 2B)

The January 2008 Amended and Restated Escrow Agreement

provides in pertinent part:

WHEREAS, certain disputes have arisen between the
Parties, and in connection therewith, Purchaser has
delivered "Purchaser Notices" to Seller and the Escrow
Agent, and in response thereto Seller has delivered
"Seller Counter Notices" to Purchaser and the Escrow
Agent;

* * *

2.   <u>Escrow Fund</u>.

* * *

13

(c) The Escrow Agent shall hold the Escrow Deposit and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "<u>Escrow Fund</u>"as directed in Section 3 below.  FOUR MILLION DOLLARS ($4,000,000) of the Escrow Fund shall be designated as the "Whitfield Account," and the remaining portion of the Escrow Fund shall be designated as the "Claim Account."

5.   <u>Disposition and Termination</u>.

(a) Within ten Business Days after the (i) dismissal with prejudice following the settlement of the Whitfield Litigation or the Whitfield Arbitration as to any particular claimant, which settlement includes a full and unrestricted release of the TCW Indemnified Parties who are parties to the Whitfield Litigation or the Whitfield Arbitration, as applicable, from any claims indemnified under the Settlement Agreement, or (ii) upon the termination of the Whitfield Litigation or the Whitfield Arbitration as to any particular claimant pursuant to a final non-appealable judgment or arbitration award, as applicable (with any such settlement, judgment or arbitration award referred to as a "<u>Final Decision</u>"), the Parties shall send a joint written instruction to the Escrow Agent to release from the Whitfield Account the amount set forth below (the "<u>Whitfield Dispute Release Amount</u>") with respect to such claimant:

| Claimant | Amount |
|---|---|
| Van Whitfield | $1,500,000 |
| Richard McCullough | $500,000 |
| Stephen Clark | $500,000 |
| Lawrence Finn | $500,000 |
| Doug Seams | $500,000 |
| Dan Behrendt | $500,000 |

(b) The joint written instruction delivered by Purchaser and Seller pursuant to Section 5(a) above shall instruct the Escrow Agent to pay from the Whitfield Dispute Release Amount with respect to a particular claimant to (i) Purchaser, the amount, if any, required pursuant to the Final Decision to be paid by the TCW Indemnified Parties to such claimant (the "<u>Claimant Judgment Amount</u>"), which amount shall be

14

promptly paid by Purchaser to the claimant, and (ii) to Seller the amount, if any, of the excess of the Whitfield Dispute Release Amount over the Claimant Judgment Amount. Notwithstanding the foregoing, if the Claimant Judgment Amount with respect to a claimant exceeds the Whitfield Dispute Release Amount with respect to such claimant, Seller shall remain liable for the excess and Purchaser may make a General Claim with respect thereto against the Claim Account. Notwithstanding the agreements of the Parties in Section 5(a) and this Section 5(b), the Escrow Agent shall have no liability or responsibility for any such provisions except to disburse funds from the Escrow Account in accordance with the joint written instructions of the Parties.

(c) In addition to the distributions paid to Seller pursuant to Section 5(b) above, an amount equal to (i) THREE MILLION DOLLARS ($3,000,000), *reduced* (but not below zero) by (ii) the amount of any General Claims made by Purchaser after the Effective Date (excluding any claims for indemnification under Section 6(a)(ii) of the Settlement Agreement with respect to any Final Decision in the Whitfield Litigation or the Whitfield Arbitration, which are covered by Sections 5(a) and 5(b) above), shall be paid and distributed by the Escrow Agent to Seller from the Claim Account on each of the first and second anniversaries of the Effective Date.

(d) Notwithstanding Section 5(c) above, the amount held in the Claim Account retained for a General Claim shall be released (i) to Purchaser and/or Seller, as appropriate, in accordance with Section 4 hereof as any such General Claim is fully resolved and settled in accordance with thie Agreement, and (ii) to Seller if a formal suit, arbitration or proceeding is not commenced by the alleged third-party claimant before the expiration of the applicable statute of limititations with respect to the matter giving rise to the General Claim, in which case of this clause (ii) the Parties shall jointly instruct the Escrow Agent to release any amount held in the Claim Account for such General Claim upon such expiration.

(e) All interest, dividends or other proceeds from the investment of the Escrow Funds (or any remaining portion thereof after the release of amounts held for

15

General Claims pursuant to Section 5(d) above) shall be distributed to Seller upon the final distribution of any amounts held in the Claim Account.

(Debtors' Exhibit 2C).

<u>Conclusions of Law</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012, provides in pertinent part that a party may assert as a defense by motion "failure to state a claim upon which relief can be granted."

A motion under Rule 12(b)(6) tests the sufficiency of the pleadings. <u>Mann v. Adams Realty Co.,</u> 556 F.2d 288 (5th Cir. 1977. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to identify the grounds of his entitlement to relief requires factual allegations sufficient to raise a right to relief above the speculative level. The complaint must contain enough facts to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claims. <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496 (5th Cir. 2000). In the instant case, the MIPA, the Settlement Agreement, and both escrow agreements are central to Plaintiffs' claims. The court has considered each

16

of these documents.

In the instant motions, in addition to asserting that Plaintiffs have failed to state a claim upon which relief can be granted, the movants assert that Plaintiffs lack standing to seek relief.  Although movants' arguments regarding standing are phrased in terms of Rule 12(b)(6), they essentially assert that the court lacks subject matter jurisdiction, as the result of the absence of a justiciable controversy.  Thus, the court analyses the standing argument under Rule 12(b)(1).

In order for this court to consider Plaintiffs' complaint, the court must have statutory subject matter jurisdiction, and the matter must be a justiciable case or controversy.  In order to have standing, the Plaintiffs must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  The Supreme Court defined an injury that is

17

"particularized" to "mean that the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S., at 561.

The bankruptcy court has statutory subject matter jurisdiction, where the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Wood v. Wood, 825 F.2d 90 (5th Cir. 1987).

In the instant case, a determination of whether $10 million held in escrow is property of the bankruptcy estate, viewed on the eve of confirmation (as provided in the confirmation order), conceivably impacts the funds available for distribution to creditors. Thus, this court has statutory subject matter jurisdiction of the instant adversary proceeding.

As to the question of whether the claims in the instant adversary proceeding are justiciable, several courts have held that creditors or parties in interest have standing to seek a determination of whether particular property is excluded from the bankruptcy estate pursuant to Section 541(c)(2) of the Bankruptcy Code. In re Swanson, 873 F.2d 1121 (8th Cir. 1989); In re Page, 239 B.R. 755 (Bankr. W.D. Mich. 1999); In re Wilcox, 225 B.R. 151 (Bankr. E.D. Mich. 1998).

Under Section 101(10) of the Bankruptcy Code, "creditor" means--

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief

18

concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10).

Plaintiffs have filed proofs of claim.  No objections have been filed as yet as to the claims.  In the absence of objection, and taking the facts in the light most favorable to the Plaintiffs, the Plaintiffs are creditors.

In the instant adversary proceeding, Plaintiffs seek a determination of whether property is excluded from the estate under Sections 541(b)(1) and 541(d) of the Bankruptcy Code, rather than Section 541(c)(2).

Section 541(b)(1) of the Bankruptcy Code provides: "Property of the estate does not include--(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor."  11 U.S.C. § 541(b)(1).

In the complaint in the instant adversary proceeding, Plaintiffs assert that the court should infer that there exists a power which Debtors can exercise solely for the benefit of an entity other than Debtors from the statement, in CDX Acquisition's schedules, that the escrowed funds are not available for use in their general operations.  (Docket No. 8, at p. 7).  Even presuming that the facts support such an inference,

such an inference does not allege an invasion of a legally
protected interest which is concrete and particularized, and
actual or imminent.  The court concludes that the claim asserted
under Section 541(b)(1) of the Bankruptcy Code is not justiciable
for lack of the Plaintiffs' standing.[4]

Section 541(d) of the Bankruptcy Code provides:

Property in which the debtor holds, as of the
commencement of the case, only legal title and not an
equitable interest, such as a mortgage secured by real
property, or an interest in such a mortgage, sold by
the debtor by as to which the debtor retains legal
title to service or supervise the servicing of such
mortgage or interest, becomes property of the estate
under subsection (a)(1) or (2) of this section only to
the extent of the debtor's legal title to such
property, but not to the extent of any equitable
interest in such property that the debtor does not
hold.

11 U.S.C. § 541(d).

In the instant case, the Plaintiffs have asserted an
equitable interest in the property escrowed.  The authority
granting standing to creditors and parties in interest to seek a
determination under Section 541(c)(2) is persuasive.  The court
concludes that Plaintiffs have standing to seek a determination
under Section 541(d) of the Bankruptcy Code as to whether the
escrowed funds are property of the estate, including the question
of whether they have an equitable interest in the escrowed funds.
The court concludes that the claim under Section 541(d) of the

---

[4]The court notes, moreover, that even if such a claim were
justiciable, it does not meet the <u>Twombly</u> standard addressed
below.

Bankruptcy Code is justiciable.

Having determined that Plaintiffs' claims under Section 541(b)(1) are not justiciable and that Plaintiffs' claims under Section 541(d) are justiciable, the court returns to the sufficiency of the pleadings under Rule 12(b)(6).

The question of whether Plaintiffs hold an equitable interest in the escrowed funds as a result of the MIPA, the Settlement Agreement, and initial and restated escrow agreements is governed by New York law.[5]

Under New York law, legal title to an escrow remains with the grantor until the occurrence of a condition specified in the agreement.  The grantee has an equitable interest in the property such that upon full performance of the conditions according to the escrow agreement, title will vest at once in the grantee.  In re O.P.M. Leasing Services, Inc., 46 B.R. 661 (Bankr. S.D.N.Y. 1985).

Both MRX and Debtors assert that Debtors are the grantee under the escrow agreement.  Neither the initial escrow agreement nor the restated escrow agreement defines "grantee" or identifies either of the parties as "grantee."  Under Section 4(a) of the original escrow agreement, Debtors, as the

---

[5]The court notes that the MIPA, the Settlement Agreement, and both escrow agreements provide that New York law applies. Even if the Texas choice of law principles are applied, New York law governs.  See Tex. Bus. & Comm. Code §§ 271.001, 271.006.

"Purchaser" may give notice to Seller of an amount alleged to be due, and Seller may contest the notice or allow the amount to be deemed owing to Debtors.

Sections 5(a) and 5(b) of the restated escrow agreement, reciting that the Purchaser has given Purchaser Notices and that Seller has given Seller Counter Notices under the original escrow agreement, provides that the parties (identified in the agreement as Purchaser and Seller) "shall send a joint written instruction to the Escrow Agent to release" funds from the account, and "shall instruct the Escrow Agent to pay" from the released funds to Debtors "the amount, if any, required pursuant to the Final Decision to be paid by the TCW Indemnified Parties to such claimant (the "Claimant Judgment Amount"), which amount shall be promptly paid by Purchaser to the claimant."

The term "TCW Indemnified Parties" is not defined in the restated escrow agreement.  The only definition of that term occurs in the Settlement Agreement.  That Agreement identifies the "TCW Indemnified Parties" as "CDX Acquisition, CDX Gas, Trust Company of the West, TCW Asset Management Company, any of their respective Subsidiaries, and any of their respective members, managers, officers, directors, successors and assigns."[6]

---

[6]The role or status of Trust Company of the West and TCW Asset Management Company in the transactions addressed in this opinion is not clear.

The January, 2008 restated escrow agreement does not contain a provision determining that there are no third party beneficiaries, and nothing in that agreement identifies a "grantee."  The court notes that neither the state court pleadings nor any of the purported judgments or orders in arbitration are before this court.  Plaintiffs have alleged facts which, if proven, render plausible a conclusion that they are third party beneficiaries of the restated escrow agreement.  The court notes that the restated escrow agreement does not prohibit third party beneficiaries.  The only place where the prohibition of third party beneficiaries appears is in agreements between Debtors and MRX.  In addition, it appears that the Debtors and MRX may have engaged in a shell game, beginning with the creation of what are now the Debtor entities in the instant Chapter 11 case, designed to eliminate without compensation the interests of parties who may have been entitled to minority interests in the Debtor entities.  It appears that Debtors and MRX now seek to ratify their corporate acts by means of subsequent agreements as to their asserted "rights" pursuant to their various acts.[7]  The court concludes that the instant motions to dismiss should be denied.

---

[7]The court notes that Debtors have filed a motion to compromise with MRX, providing, <u>inter</u> <u>alia</u>, that Debtors and MRX will split the $10 million escrowed funds between them, and release one another from any indemnity obligations under the MIPA.

23

Based on the foregoing, a separate Judgment will be entered denying the "Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted" (Docket No. 12) filed by MR Exploration Ventures, LLC ("MRX") and the "Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted (Docket No. 23) filed by CDX Gas, LLC, CD Exploration, LLC, CDX North America, LLC, CDX Acquisition Company, LLC, and CMV Joint Venture.

Signed at Houston, Texas on November 10, 2009.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE